**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**RYAN VANTEEL HARRIS (#391818)**                              **CIVIL ACTION**

**VERSUS**

**DR. GAMBLE, ET AL.**                                         **NO. 11-0727-SDD-RLB**

**NOTICE**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in Baton Rouge, Louisiana, on October 17, 2013.

                      **RICHARD L. BOURGEOIS, JR.**
                        **UNITED STATES MAGISTRATE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RYAN VANTEEL HARRIS (#391818)                    CIVIL ACTION

VERSUS

DR. GAMBLE, ET AL.                                NO. 11-0727-SDD-RLB

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on a Motion to Dismiss and Motion for Summary Judgment filed by the defendant, Dr. Matthew Gamble, rec.doc.nos. 28 and 40. The plaintiff has filed an opposition to the defendant's motion for summary judgment.

The pro se plaintiff, an inmate incarcerated at the Elayn Hunt Correctional Center ("EHCC"), St. Gabriel, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against the Louisiana Department of Public Safety and Corrections and Dr. Matthew Gamble, a psychiatrist employed at EHCC. The plaintiff complains that his constitutional rights were violated by the forced administration of medication at EHCC, notwithstanding that he attempted to refuse all medical treatment. In amendments to the original Complaint, the plaintiff referred to two unspecified dates when he was allegedly administered injections after calmly refusing to take oral medications, and he asserts that the foregoing actions were the result of defendant "Dr. Gamble's recommendation." See rec.doc.nos. 9 and 17.[1] Pursuant to earlier motion, granted by the Court on March 19, 2012, the plaintiff has voluntarily dismissed his claims asserted against

---

1. The plaintiff's pleadings are poorly worded, and his factual allegations are extremely vague and lacking in detail or specificity. The Court, however, has interpreted these allegations liberally, as is appropriate with the pleadings of pro se petitioners. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

the Louisiana Department of Public Safety and Corrections.  See rec.doc.nos. 6 and 12.  In addition, the Court has granted, in part, previous motions to dismiss filed by defendant Gamble, and has thereby declined the exercise of supplemental jurisdiction over the plaintiff's state law claims and dismissed the plaintiff claims asserted against defendant Gamble in the defendant's official capacity.  See rec.doc.nos. 16, 22 and 23.  As a result, the claim remaining before the Court is the plaintiff's claim that defendant Gamble, in the defendant's individual capacity, violated the plaintiff's federal constitutional rights by subjecting the plaintiff to the forced administration of medication.

Addressing first the defendant's Motion for Summary Judgment, rec.doc.no. 40, the defendant seeks dismissal of this proceeding relying upon the pleadings, a Statement of Undisputed Facts, an affidavit executed by defendant Dr. Matthew Gamble, a copy of the defendant's responses to the plaintiff's written discovery in this case, a certified copy of Department Health Care Policy No. HC-26, certified copies of excerpts from the plaintiff's medical and mental health records, a certified copy of a Petition for Competency Hearing filed on January 3, 2011, in the 18th Judicial District Court for the Parish of Iberville, State of Louisiana, and a certified copy of a state court Judgment dated July 26, 2011, ruling in favor of the Louisiana Department of Corrections in connection with the referenced Petition, determining that the plaintiff was "incompetent to provide an informed refusal of necessary medical or psychiatric treatment," and authorizing the Department to "continue the current forced-medication protocol, additional medication, forced medication, and forced hydration [which] the medical staff deems in the best interest of [the plaintiff] for as long as medically necessary for the treatment of his medical or psychiatric condition."

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Rule 56, Federal Rules of Civil Procedure.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.  Celotex Corporation v. Catrett, supra, 477 U.S. at 323.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  Anderson v. Liberty Lobby, Inc., supra, 477 U.S. at 248.  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  Celotex Corporation v. Catrett, supra, 477 U.S. at 323.  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.  Little v. Liquid Air Corp., supra, 37 F.3d at 1075.  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual

disputes. International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992).

In his Complaint, as amended, the plaintiff alleges, invoking the Eighth Amendment to the United States Constitution, that he was subjected to cruel and unusual punishment when he was forcibly administered medications against his will, notwithstanding that he attempted to calmly advise prison medical personnel that he wished to refuse all medications.  The plaintiff further asserts that this conduct was the result of orders or instructions issued by defendant Gamble.  Interpreting the plaintiff's allegations liberally, the Court also finds that the plaintiff has invoked his constitutional right under the Fourteenth Amendment to be free from the forced administration of medical treatment without appropriate procedural safeguards.  In this regard, courts have recognized that there is a "significant liberty interest" in avoiding the unwanted administration of medication, and although an inmate may be treated against his will if the treatment is in the prisoner's best medical interests and if he is dangerous to himself or others, procedural safeguards must be employed to ensure that the prisoner's constitutional rights are respected.  Cowan v. Scott, 31 Fed. Appx. 832, *4 (5th Cir. 2002), citing Washington v. Harper, 494 U.S. 210, 221-22 (1990) (upholding a prison policy which allowed the forced administration of medication where such medication was first prescribed by a physician and was thereafter approved by a reviewing physician).  See also Cruzan v. Director, Missouri Department of Health, 497 U.S. 261, 278 (1990) (acknowledging the general principle "that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment").

In response to the plaintiff's allegations, the defendant contends that he is entitled to qualified immunity in connection with the plaintiff's claims.  Specifically, the defendant contends that the plaintiff's allegations and evidentiary showing fail to show the existence of a

genuine issue of disputed material fact relative to any violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  Huff v. Crites, 473 Fed. Appx. 398, 399 (5th Cir. 2012).  As enunciated in Saucier v. Katz, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights.  Id. at 201.  Second, the district court looks to whether the rights allegedly violated were clearly established.  Id.  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.  Id.  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.  Id. at 202.  The assertion of the qualified immunity defense alters the summary judgment burden of proof.  Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005).  Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct."  Gates v. Texas Department of Protective and Regulatory Services, 537 F.3d 404, 419 (5th Cir. 2008), citing Michalik v. Hermann, supra, 422 F.3d at 262.[2]

---

2. The United States Supreme Court has held that rigid chronological adherence to the Saucier two-step methodology is not mandatory.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.  Id.

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court concludes that the defendant's motion for summary judgment should be granted. Specifically, the Court finds that the plaintiff's allegations and evidentiary showing fail to overcome the defendant's assertion of the defense of qualified immunity.

Addressing first the plaintiff's claim that the forced administration of medication violated his Eighth Amendment right to be free from cruel and unusual punishment, this claim apparently relates to the force employed by prison officials in administering injections of medications on unspecified dates. In this regard, however, the law is clear that a use of force by a prison official is excessive and violates the Eighth Amendment only if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010), quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992). Factors which may be considered in determining whether a use of force has been excessive include the need for the application of force, the relationship between the need for force and the amount of force utilized, and the extent of injury sustained, if any. Hudson v. McMillian, supra, 503 U.S. at 7.

Applying this standard, the plaintiff's claim under the Eighth Amendment fails as a matter of law. The evidence adduced by the defendant conclusively establishes that the defendant's intent in ordering the administration of medication to the plaintiff was not for the purpose of punishing the plaintiff or for the purpose of maliciously and sadistically causing him harm. Instead, the evidence shows that the defendant's intent in ordering such medication was for the purpose of providing the plaintiff with appropriate medical treatment. Specifically, it appears that the plaintiff was transferred from the Louisiana State Penitentiary ("LSP") to EHCC on December 9, 2010, after the plaintiff attempted to hang himself at LSP and after the plaintiff

went on a hunger strike and refused to take nourishment and fluids. Inasmuch as the plaintiff had previously been diagnosed as suffering with "schizophrenia of the paranoid type" and with "antisocial personality traits," a determination was made at that time by LSP medical providers to transfer the plaintiff to EHCC for evaluation, treatment and, if necessary, forced psychotropic medication. Upon such transfer, defendant Gamble interviewed the plaintiff on December 10, 2010, and concluded that the plaintiff was presenting in an emergency condition, was overtly psychotic and delusional, lacked the capacity to give informed consent, was neither eating nor drinking, and presented a clear danger to himself and others. This conclusion was consistent with the recent previous finding made by a psychiatrist at LSP, Dr. Reinbold. Accordingly, defendant Gamble made the decision to institute a forced medication protocol at EHCC in accordance with Department Health Care Policy No. HC-26, which protocol authorizes the administration of forced medication when at least two physicians independently determine that an inmate may lack the decisional capacity to give informed consent. Pursuant to this protocol, the plaintiff was to be offered oral medications every morning – which he could choose to voluntarily take or not – but upon his failure or refusal to take the medications, he would be administered medication by injection, forcibly if necessary. According to the defendant's affidavit, a review of the plaintiff's medical records reflects that, for the most part, the plaintiff cooperated in taking the oral medications. In addition, the defendant attests that the plaintiff's condition slowly improved during the ensuing months and that in April, 2011, the defendant made a determination to cancel the forced medication protocol.[3]

---

3. In the interim, while the forced medication protocol was in effect, prison officials also undertook to obtain approval from a state court for the forced administration of medication to the plaintiff. To this end, a Petition for Competency Hearing was filed in state court on January 3, 2011, and a state court judge thereafter determined, pursuant to Judgment entered on July 26,

Based on the foregoing, there can be no serious dispute regarding whether the actions of defendant Gamble were motivated by malicious or sadistic intent or were for the purpose of punishing the plaintiff or causing the plaintiff harm.  Contrary to the plaintiff's assertions, the evidentiary showing is instead entirely consistent with the exercise by the defendant of his medical judgment in providing treatment which he deemed to be appropriate for the plaintiff's serious condition.   Moreover, the plaintiff does not dispute any of the factual assertions contained in the defendant's affidavit and does not allege that there was any antagonism between himself and the defendant or that the defendant intended to cause him harm.  Finally, the plaintiff does not allege that he suffered any injury in fact or that he ever physically resisted prison officials when they administered the referenced injections.  On this showing, therefore, the Court concludes that there is no legal or factual basis for the plaintiff's claim arising under the Eighth Amendment, and this claim should be dismissed.[4]

Turning to the plaintiff's claim arising under the Fourteenth Amendment, this claim asserts a violation of the plaintiff's substantive and procedural due process as guaranteed by the

---

2011, that the forced administration of medication was warranted.  See rec.doc.nos. 40-5 and 40-6.  At the time that the Judgment was issued, however, the forced medication protocol had already been terminated upon orders of the defendant.

4. To the extent that the plaintiff's allegations may be interpreted as complaining regarding any alleged use of unreasonable force by unnamed prison officials during the implementation of the forced medication protocol issued by Dr. Gamble, this claim is not properly before the Court.  Specifically, personal participation by a supervisory official in an alleged constitutional violation or a causal connection between the official's conduct and the constitutional violation alleged is a prerequisite for liability under 42 U.S.C. § 1983, see Lozano v. Smith, 718 F.2d 756, 768 (5th Cir. 1983).  The plaintiff does not allege, however, that defendant Gamble personally participated in forcibly administering medication at any time.  Accordingly, defendant Gamble may not be found liable for any alleged wrongdoing by other prison personnel who may have used unreasonable force during the implementation of the physician's orders.

Due Process Clause thereof, pursuant to which a competent person has a liberty interest in refusing the administration of unwanted medical treatment.  See Cruzan v. Director, Missouri Department of Health, supra, 497 U.S. at 278.  In this regard, it has been held that prisoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment."  Washington v. Harper, 494 U.S. 210, 221-22 (1990).  However, as stated in Cruzan, supra, "determining that a person has a 'liberty interest' under the Due Process Clause [in refusing unwanted treatment] does not end the inquiry; 'whether respondent's constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests.'"  Id. at 279.  In the prison context, such countervailing state interests include the provision of appropriate and necessary medical treatment to inmates, as well as the need to ensure the safety and security of the prison and the people who live and work within it.  Washington v. Harper, supra, 494 U.S. at 222, 236 (upholding a state regulation which permitted prison officials to forcibly medicate mentally ill prisoners "to reduce the danger that an inmate suffering from a serious mental disorder represents to himself or others;" also noting that the extent of a prisoner's rights in refusing unwanted treatment "must be defined in the context of the inmate's confinement").  Thus, an inmate may be treated with antipsychotic drugs against his will if the treatment "is in the prisoner's medical interests, given the legitimate needs of his institutional confinement," and he is dangerous to himself of others.  Id. at 222.  The Supreme Court has not clearly set forth the contours of the procedural protections which must be afforded to inmates prior to the forced administration of medication.  In Washington v. Harper, supra, however, the Court concluded that a prior judicial determination was not required and that the inmate was afforded appropriate due process.  In that case, the inmate had been evaluated by a psychiatrist who had determined

that the inmate was in need of treatment, a hearing had thereafter been conducted before an independent group of physicians and administrators, and the inmate had received (1) prior notice of the hearing, (2) an opportunity to appear and present evidence and witnesses, (3) an explanation of the need for treatment, and (4) the assistance of an advisor with knowledge and understanding of the issues involved.  Id. at 215-216.

In Louisiana, the pertinent Health Care Policy applicable to inmates in the custody of the Department of Corrections is Health Care Policy No. HC-26, which provides that:

> When an inmate refuses non-emergency mental health treatment and it is determined that he may lack the decisional capacity to give informed consent, then contact should be initiated with HRDC [a screening unit at EHCC] for preliminary evaluation and to make arrangements for transfer to HRDC ....  Forced medication under these circumstances may be administered only at HRDC/EHCC or FRDC/LCIW [for female inmates] and then only after two psychiatrists/physicians concur in the need to involuntarily treat.  There is a 15 day limit for such treatment in accordance with La. R.S. 15:830.1.  At the conclusion of the 15 day period, judicial authority must be sought.  Treatment may then continue pending judicial review.

From a review of the evidence adduced by the defendant on summary judgment, it appears that there was substantial compliance with this provision.  In this regard, the plaintiff's medical records reflect that in October, 2010, while confined at LSP, he was issued a disciplinary report and was re-classified to punitive segregated confinement after "gallons of fermenting urine" were discovered in his cell.  Thereafter, on December 3 and 4, 2010, respectively, shortly before his transfer to EHCC, the plaintiff attempted to commit suicide and commenced a hunger strike at LSP, and was placed on suicide watch.  Pursuant to Health Care Policy No. HC-26, a psychiatrist at LSP, Dr. William Reinbold, concluded that the likelihood of a psychotic process being involved in the plaintiff's refusal to eat or drink was "dangerously high" and that there was a serious "passive danger of starvation."  See rec.doc.no. 36-20.  Dr. Reinbold further concluded that "forced psychotropic medication [was] acutely indicated" and requested that the plaintiff be

transferred to EHCC for evaluation, treatment, and forced administration of psychotropic medication if necessary.  Id.  This transfer then took place on December 9, 2010, and defendant Dr. Gamble evaluated the plaintiff the next day.  See rec.doc.no. 36-32.  As a result of this evaluation, Dr. Gamble concluded, as stated in the defendant's affidavit, that "there was a clear indication that [the plaintiff] presented in a medical and mental health emergency (i.e. he was overtly psychotic, lacked capacity to give informed consent, was not eating or drinking, and had recently attempted to hang himself)," and that he was "overtly dangerous to himself and to others."  See rec.doc.no. 40-3.  Accordingly, Dr. Gamble agreed with the recommendation of Dr. Reinbold that the plaintiff should be forcibly administered psychotropic medication if he refused to take oral medications that would be offered to him.  Dr. Gamble thereafter monitored the plaintiff's progress on a regular basis and found that the plaintiff slowly improved during the ensuing weeks and months.  Id.  In addition, the defendant notes that the plaintiff, for the most part, agreed to voluntarily take the daily proffered oral medication, id., and although forcibly administered injections were required seven times during the month of December, 2010, such administration was only required three times in January, 2011, one time in February, 2011, and one time in April, 2011.  See rec.doc.no. 35-8 at pp. 8-9.  Finally, on April 13, 2011, Dr. Gamble made the determination to discontinue the forced medication protocol.  See rec.doc.no. 40-3.

In addition to the foregoing, after commencement of the forced medication protocol in December, 2010, the Louisiana Department of Corrections filed a petition in state court on January 3, 2011, pursuant to La. R.S. 15:831.1, seeking a judicial determination that the forced administration of medication to the plaintiff was warranted.  See rec.doc.no. 40-5.  A hearing was thereafter conducted pursuant to the referenced statute, and the state court judge determined, on July 26, 2011, that such administration was justified.  See rec.doc.no. 40-6.  By the time that

decision was issued, however, the forced medication protocol had already been discontinued by Dr. Gamble. The plaintiff does not suggest that the procedures attendant to the above-referenced statute were not complied with, which procedures include notice to the plaintiff and representation by counsel at the hearing.[5]

Based on the foregoing, the Court concludes that defendant Gamble is entitled to qualified immunity in connection with the plaintiff's claims asserted herein. As previously noted, the parameters of the procedural protections required by the Fourteenth Amendment are not entirely clear in this context, and it has been suggested that these protections are less restrictive when an emergency situation is perceived to be presented. See , e.g., Dancy v. Gee, 51 Fed. Appx. 906 (4th Cir. 2002) (upholding a grant of summary judgment to the defendants where the plaintiff complained of 22 instances of forced medication over a 2 year period, without a hearing or opportunity to challenge the physician's determination, based upon a finding of an emergency need); Hogan v. Carter, 85 F.3d 1113, 1118 (4th Cir.), cert. denied, 519 U.S. 974 (1996) (upholding grant of qualified immunity to a physician who ordered a forced administration of medication without a hearing in an emergency situation). In the instant case, the plaintiff was evaluated by a physician and psychiatrist at LSP, was determined to be in acute

---

5. La. R.S. 15:830.1 provides, in pertinent part:

A. Whenever a mentally ill or mentally retarded inmate refuses treatment and any staff physician, staff psychiatrist, or consulting psychiatrist of the institution certifies that the treatment is necessary to prevent harm or injury to the inmate or to others, such treatment will be permitted for a period not to exceed fifteen days. If treatment for a longer period is deemed necessary, a petition shall be filed in a court of competent jurisdiction setting forth the reasons for the treatment. Treatment shall continue while the hearing is pending. After a hearing at which the mentally ill or mentally retarded inmate is represented by counsel, the court shall determine whether the inmate is competent and, if not, he shall order that appropriate treatment be provided. If the inmate does not have counsel, the court shall appoint an attorney to represent him.

need of forced psychotropic medication, and was transferred to EHCC for a second independent evaluation by defendant Gamble.  After the transfer, Dr. Gamble evaluated the plaintiff and also determined that the plaintiff was overtly psychotic, paranoid and delusional.  The plaintiff had recently attempted suicide, had been refusing to eat for a period approaching eight days, and had recently begun refusing to drink fluids.  He was admitted to EHCC and was classified at "Level of Care 1," which is the most acute mental health care level provided within the Louisiana Department of Corrections.  See rec.doc.no. 40-3.  Upon review, Dr. Gamble found that the plaintiff's mental condition precluded an ability to provide informed consent and that the plaintiff presented an "imminent threat to self." See rec.doc.no. 36-32.  Accordingly, based upon Department Health Care Policy HC-26 and La. R.S. 15:830.1, Dr. Gamble instituted the forced medication protocol of which the plaintiff complains.  Although the plaintiff was not provided with notice and a hearing prior to the institution of the forced medication protocol, a Petition for Competency was filed shortly thereafter, and a hearing was subsequently conducted which resulted in a judgment affirming and upholding the prior determination.[6]  Based upon this showing, and in light of the fact that "a prisoner may be administered psychotropic drugs against his will if it is in the prisoner's medical interest and he is dangerous to himself or others," Irvin v. Casasanta, 41 F.3d 661 (5th Cir. 1994), citing Washington v. Harper, supra, 494 U.S. at 222-

---

6. The referenced statute provides that judicial approval for the forced administration of medication to an inmate must be sought within 15 days after commencement of the forced medication protocol.  Although the referenced Petition for Competency Hearing was not filed until approximately 24 days after commencement of the protocol, the Court finds that this represents a mere violation of state law which is not actionable under 42 U.S.C. § 1983.  See Woodard v. Andrus, 419 F.3d 348, 353 (5th Cir. 2005) ("[A] violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights").  See also Gerhart v. Hayes, 201 F.3d 646, 650 (5th Cir.), cert. denied, 531 U.S. 1014 (2000) ("The fundamental issue in due process law is not whether state officials violated state law, but whether they provided the plaintiff with constitutional minima").

27, the Court finds that the defendant is entitled to summary judgment and that the plaintiff's claims should be dismissed.[7]

## RECOMMENDATION

It is recommended that the defendant's Motion for Summary Judgment, rec.doc.no. 40, be granted, dismissing the plaintiff's claims asserted against the defendant, with prejudice. It is further recommended that the defendant's Motion to Dismiss, rec.doc.no. 28, be denied as moot.

Signed in Baton Rouge, Louisiana, on October 17, 2013.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

---

7. In light of the Court's recommendation that the plaintiff's claims be dismissed on motion for summary judgment, it is appropriate that the defendant's pending motion to dismiss, rec.doc.no. 28, be denied as moot.